IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT TRETHAWAY, | : | Civ. No. 1:23-CV-1523 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Bloom) |
| | : | |
| JOSEPH PIZANO, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I.   Introduction

This case comes before us for consideration of a motion to dismiss filed by three of the defendants—Gary Stavish, Randall Colarusso, and the Borough of West Wyoming.[1] (Doc. 24). The plaintiff, Scott Trethaway, brought this action against these defendants and others, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. (Doc. 1). In his complaint, Trethaway names five municipal entities, the Wyoming Area Regional Police Commission, and twelve individual defendants, alleging that he was denied employment with the Wyoming Area Regional Police

---

[1] This is one of six motions to dismiss filed by the various defendants. (*See* Docs. 24, 25, 26, 28, 29, 30). Each motion will be addressed by a separate Memorandum Opinion.

Department because of his involvement with union activities, in violation of his First Amendment rights. (*Id.*). Trethaway asserts a First Amendment retaliation claim against the individual defendants, as well as a *Monell*[2] claim against the Commission and the Municipal Defendants. (*Id.*).

Defendants, Stavish, Colarusso, and the Borough of West Wyoming now move to dismiss the claims against them. (Doc. 24). They argue that Trethaway has not pleaded the requisite personal involvement of the individual defendants, and further, that he cannot establish *Monell* liability against the Municipal Defendant. After consideration, we agree that Trethaway cannot establish *Monell* liability against the Borough, but we find that he has pleaded sufficient facts at this stage to establish the individual defendants' personal involvement in the alleged First Amendment violation. Accordingly, the motion will be granted in part and denied in part.

---

[2] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

II.  <u>Background</u>

The plaintiff, Scott Trethaway, was employed as a police officer by the Borough of Wyoming in Luzerne County, Pennsylvania. (Doc. 1 ¶ 29). During his employment, Trethaway was actively involved in the Fraternal Order of Police Lodge 36 (the "Union"). (*Id.* ¶ 31).  In January of 2022, five municipalities—the Borough of Wyoming, the Borough of Exeter, the Borough of West Wyoming, the Borough of West Pittston, and Exeter Township (the "Municipal Defendants")—created the Wyoming Area Regional Police Commission (the "Commission") to oversee the newly created Wyoming Area Regional Police Department. (*Id.* ¶¶ 24, 34). This Commission was created pursuant to an intergovernmental cooperation agreement between the Municipal Defendants, which "vested in [the Commission] the management and administration of law enforcement . . . including the supervision, hiring, promotion of police officers and police administration employed by the regional police department." (*Id.*). Around this same time, the Wyoming Area Regional Police Association (the "Association") was formed, and Trethaway was unanimously elected President. (*Id.* ¶ 33).

3

Following the creation of the Commission, Trethaway alleges that the Commission refused to negotiate or bargain with the Union or the Association and refused to honor existing collective bargaining agreements. (Doc. 1 ¶ 35). Specifically, the complaint asserts that Defendants Pizano, Stavish, Colarusso, and Dominick openly exhibited anti-union animus, in that Pizano threatened the employment of Union members who supported Trethaway; Stavish stated that the Commission and regional police department would set its own terms and refuse to enter a collective bargaining agreement; Dominick initiated unfounded investigations into Union and Association officers despite informing members of the municipal police departments that they would receive jobs in the regional police department; and Colarusso stated that the Commission had no intention of negotiating or even meeting with the Union or its representatives. (*Id.* ¶¶ 36-41, 53). As to Trethaway, the complaint alleges that he applied for a supervisory position and a full time police officer position with the regional police department, but he was not contacted by the Commission for an interview or considered for the either position. (*Id.* ¶¶ 51, 55). He contends that these positions were offered to less qualified officers who were not involved in the Association,

and that he and other officers involved in the Union and Association were deliberately excluded. (*Id.* ¶¶ 56-57).

Thus, Trethaway's complaint brings a First Amendment retaliation claim pursuant to § 1983 against the individual defendants who made up the Commission—Defendants Pizano, Morgan, Dominick, Scaltz, Redmond, Kreseki, Stavish, Colarusso, Alfano, and Quinn; as well as Defendant Pace, the Chief of the regional police department, and Defendant Skilonger, a borough councilperson who was later appointed as a full time police officer with the regional department. (Doc. 1, Count I). He also brings a municipal liability claim under *Monell* against the Commission and the Municipal Defendants, arguing that these defendants had a policy or practice of exhibiting anti-union bias and discrimination, which was the motivating factor in refusing to consider Trethaway for a position in the regional police department. (*Id.*, Count II).

Stavish, Colarusso, and the Borough of West Wyoming now move to dismiss the claims against them. (Doc. 24). As to the individual defendants, they contend that Trethaway has not alleged facts supporting their personal involvement in the decision not to hire or

consider him for a position within the regional police department. With respect to the Borough, the defendants argue that the Borough has no control over the Commission, and thus, cannot be liable for failing to hire Trethaway under a *Monell* theory of liability. This motion is fully brief and ripe for resolution. (Docs. 37, 44). After consideration, we will grant the motion as to the Borough but deny the motion as to the individual defendants.

III.    <u>Discussion</u>

A. <u>Motion to Dismiss - Standard of Review</u>

The defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

## B. The Motion to Dismiss will be Granted in Part and Denied in Part.

As we have noted, the plaintiff asserts a First Amendment retaliation claim against Stavish and Colarusso, alleging that as members of the Commission, they retaliated against him for his involvement with the Union by refusing to consider him for the

supervisory or full time officer positions. He further claims that the Borough, as a Municipal Defendant, has a policy or practice of discriminating against Union members or exhibiting anti-Union bias, which led to the Commission's decision not to consider Trethaway for the positions. As we will discuss, we conclude that Trethaway has set forth sufficient allegations against the individual defendants at this stage to state a claim for First Amendment retaliation. However, his claim against the Borough fails as a matter of law and will be dismissed.

## 1. Individual Defendants

Trethaway's claim against the individual defendants is one of retaliation for exercising his First Amendment rights.[3] He asserts this claim pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

_____

[3] Trethaway has conceded that he is not bringing claims against the individual defendants in their official capacities but in their individual capacities only. (Doc. 44 at 1).

42 U.S.C. § 1983. Liability under § 1983 requires a plaintiff to show that the defendant had personal involvement in the alleged constitutional violation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Personal involvement may be shown through allegations regarding the defendant's own conduct, or that the defendant had knowledge of the unconstitutional conduct and acquiesced in the behavior. *Id.*

Further, to state a First Amendment retaliation claim, the plaintiff must show: (1) that he engaged in constitutionally protected conduct; (2) that he suffered "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) a causal connection between the protected activity and the retaliatory act. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In this case, the defendants contend that Trethaway has not alleged facts to establish their personal involvement in the alleged violation of his constitutional rights. However, our review of the complaint indicates that Trethaway has, in fact, pleaded specific facts as to these defendants to state a plausible First Amendment retaliation claim against them. Trethaway's First Amendment claim is premised on his freedom to associate and be involved with the Union. The Third Circuit has held that

union association is a protected right under the First Amendment. *See Palardy v. Twp. of Millburn*, 906 F.3d 76, 84 (3d Cir. 2018). Further, Trethaway has alleged an adverse action in that the defendants, as members of the Commission, refused to hire him for a position with the regional police department. *See Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) ("A public employer 'adversely affects an employee's First Amendment rights when it refuses to hire an employee because of the exercise of those rights[.]"). Finally, the plaintiff has alleged that the failure to hire him was causally connected to his membership in the Union. Trethaway's complaint asserts that the defendants openly displayed ant-Union animus, and that because of his Union membership, he was not considered for employment by the Commission. Accordingly, we conclude that Trethaway has sufficiently alleged a causal connection between his Union membership and the adverse action.

As to the individual defendants' personal involvement, Trethaway's complaint asserts that Stavish and Colarusso were members of the Commission that failed to hire him for the supervisory and full time officer positions. While their membership on the Commission, standing alone, may not be enough to show their personal involvement,

Trethaway's complaint contains additional allegations against these defendants. Specifically, the complaint asserts that Stavish was openly hostile to the idea of negotiating with the Union or Association, and stated that if the members did not like the way the Commission was doing things, they could "get the fuck out." (Doc. 1 ¶ 39). The complaint further alleges that Stavish and Colarusso openly stated that the Commission had no intention of bargaining or even meeting with the Association or the Union. (*Id.* ¶ 53). Thus, we can infer from these allegations of anti-union animus, coupled with the fact that these individual defendants were members of the Commission that declined to hire Trethaway, that these individual defendants were personally involved in the decision not to consider or hire Trethaway, and that this decision was based on Trethaway's Union membership. Accordingly, we will deny the motion to dismiss Trethaway's First Amendment claim against the individual defendants.[4]

---

[4] We note that while the plaintiff's brief in opposition contends that the individual defendants were involved in "a wide-ranging conspiracy . . . to break the union and retaliate against Plaintiff," (Doc. 44 at 10), the complaint does not contain any allegations of a conspiracy or an agreement between the defendants to violate the plaintiff's constitutional rights. "[I]t is axiomatic that the complaint may not be amened by the briefs in oppositions to a motion to dismiss." *Com. of Pa. ex rel.*

2. <u>**The Borough of West Wyoming**</u>

Trethaway also asserts a claim against the Borough of West Wyoming under a theory of *Monell* liability, alleging that the Borough had a policy or practice of anti-union discrimination and retaliation, and that this policy or practice was the moving force behind the decision not to hire him for a position with the regional police department.

A municipal entity may be liable for a constitutional violation under § 1983 if the violation was a direct result of the entity's policy, custom or practice. *Monell*, 436 U.S. at 695. However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff may show that either an official policy of the municipality was

---

*Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotations and citation omitted). Accordingly, any such claim for conspiracy fails.

the moving force behind the violation, or that the municipality had an informal custom such that it operated as the municipality's policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 690. In either scenario, the plaintiff has the burden to show that the policy or custom was implemented or acquiesced in by a policymaker. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Here, the Borough contends that it cannot be held liable under *Monell* because the Commission, which is a separate legal entity and a defendant in this matter, made the decision not to hire the plaintiff. The defendants attach a copy of the intergovernmental cooperation agreement between the five Municipal Defendants in support of its argument that the Commission, not the municipalities, had the authority to hire police officers for the regional police department. (Doc. 37-1, Ex. A). For his part, Trethaway contends that we may not consider the agreement, as he did not attach it to his complaint and his claims do not depend upon the document.

It is well settled that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension*

*Benefit Guaranty Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). As the Court of Appeals recognized, "[w]hen a complaint relies on a document, . . . the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Id.* at 1196-97 (citation omitted). A plaintiff who "has relied upon the[] document[] in framing the complaint" is not permitted to "prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citation omitted).

Here, the plaintiff's complaint specifically alleges that the Commission was created by the Municipal Defendants pursuant to the intergovernmental cooperation law, and that the Municipal Defendants "have vested in the Commission the management and administration of law enforcement . . . including the supervision, hiring, promotion of police officers and police administration employed by the regional police department." (Doc. 1 ¶¶ 24-25). Accordingly, it is clear from the complaint that although the plaintiff does not attach or directly cite the agreement, he "is on notice of the contents" of the agreement. *Pension Benefit*

*Guaranty Corp.*, 998 F.2d at 1196. Moreover, Trethaway's claims of retaliation are premised upon the Commission's failure to hire him to the regional police department, which his complaint alleges is the responsibility of the Commission. (*Id.* ¶¶ 68, 72). Accordingly, we conclude that we may properly consider the agreement attached to the defendants' motion to dismiss, as the plaintiff has relied, at least in part, on the agreement in framing the complaint.

The agreement between the Municipal Defendants states that the Commission has the express authority and power to "hire, fire, suspend, promote, demote, discipline, and otherwise deal with employees . . ." and "establish salaries and terms and conditions of employment of uniformed and non-uniformed employees." (Doc. 37-1 at 12). Further, the agreement provides that "Regional Department police officers and civilian personnel shall be employees of the Commission and shall be under the direct supervision of a regional police chief who will report to the Commission." (*Id.* at 13). Given this language granting express authority to the Commission to hire, fire, and manage the regional police department, we cannot conclude that the Borough of West Wyoming can be held liable under *Monell*. Rather, it would appear that the policies and practices

regarding the hiring of regional police department officers and employees are exclusively left to the Commission. In fact, the agreement expressly provides for the Commission to "adopt written, uniform policies on wages, hours and conditions and terms of employment and other matters relating to effective police service[.]" (*Id.* at 12).

One court in this circuit found that similar language in an agreement creating a regional police department relieved the municipal entity of any liability regarding the policies and practices of the police department. *See Leventry v. Watts*, 2007 WL 1469044, at *3 (W.D. Pa. May 17, 2007).[5] The *Leventry* court reasoned that the agreement, which created a regional police department and granted authority over police matters to a police commission, "clearly gives the Commission sole authority over all police matters." *Id.* Accordingly, the court found that because "the Commission is an independent entity with exclusive authority over all police matters[,]" the municipal entity that created the Commission could not be held liable under § 1983. *Id.* We find this reasoning persuasive. Here, the Municipal Defendants have clearly and

---

[5] Because we have concluded that we may properly consider the agreement attached to the defendants' motion to dismiss, the fact that *Leventry* was decided at the summary judgment stage is immaterial.

unequivocally given express authority to the Commission to hire, fire, create policies, and otherwise deal with all employees and practices regarding the regional police department. Accordingly, we cannot conclude that the Borough of West Wyoming can be held liable under § 1983 for the alleged retaliatory policies and practices of the Commission.

The plaintiff contends that the Municipal Defendants are joint employers with the Commission and relies on *Borough of Lewistown v. Pa. Labor Relations Bd.*, 735 A.2d 1240 (Pa. 1999). However, the Pennsylvania Supreme Court in that case dealt with joint employer liability under Act 111, a labor relations statute. As one court in this district has noted, the Pennsylvania Borough Code "indicates that the Pennsylvania Legislature has clearly intended that police officers of a regional police force are only employees of the regional police force." *Gaus v. Pocono Mountain Regional Police Comm'n*, 2017 WL 5070227, at *11 (M.D. Pa. Nov. 3, 2017) (Mannion, J) (citing 8 Pa. Cons. Stat. § 1122(b)). Accordingly, the *Gaus* court reasoned that "[i]t is the responsibility of the Pennsylvania legislature, not a function of this court, to decide and enact applicable law governing police officers of a regional police department[.]"

*Id.* (finding that the municipal entities were not "joint employers" with the Police Commission).

While *Gaus* dealt with employment issues in the context of the Police Tenure Act and the Borough Code, we find this reasoning persuasive in this case. Here, the agreement between the Municipal Defendants is clear and unambiguous in its language that "Regional Department police officers and civilian personnel *shall be employees of the Commission* and shall be under the direct supervision of a regional police chief who will report to the Commission. All appointments, promotions, suspensions, and removals *shall be made by the Commission*." (Doc. 37-1 at 13) (emphasis added). Therefore, we cannot conclude that the Borough of West Wyoming was Trethaway's joint employer and can be held liable under § 1983. Accordingly, the § 1983 claim against the Borough will be dismissed with prejudice.

## IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss (Doc. 24) will be GRANTED IN PART AND DENIED IN PART as follows:

1. The motion will be GRANTED as to the claim against the Borough of West Wyoming, and this claim will be dismissed WITH PREJUDICE; and

2. The motion will be DENIED as to the claim against the individual defendants.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge